UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ERIK BRUSKOTTER,**

        **Plaintiff,**

v.                                                        Case No:  6:13-cv-1841-Orl-41DAB

**ROBERT BOSCH TOOL CORPORATION,**

        **Defendant.**
_____/

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Partial Summary Judgment (Doc. 48) and Defendant's Motion to Exclude Expert Testimony of Darry Robert Holt and Stephen F. Gass, Ph.D. ("Mot. to Exclude," Doc. 47). As set forth below, Defendant's Motion for Partial Summary Judgment will be granted, and Defendant's Motion to Exclude will be granted in part and denied in part.

### I.    BACKGROUND

Plaintiff alleges that he suffered permanent injuries when his thumb came into contact with the rotating blade of a benchtop table saw that was designed, manufactured, marketed, and sold by Defendant. (Am. Compl., Doc. 4, ¶¶ 6, 16). Plaintiff further alleges that the saw at issue was defective because it did not incorporate flesh-detection technology, which, according to Plaintiff, was available at the relevant time. (*Id.* ¶¶ 12–15). An example of such technology is called "SawStop." (*Id.* ¶ 12). A company by the name of SawStop, LLC currently produces table saws that contain the SawStop technology. (Gass Decl., Doc. 52-23, ¶¶ 2, 9). Plaintiff asserts that

Defendant is liable for his damages as a result of the incident under theories of strict product liability (Count I) and negligence (Count II).

## II. SUMMARY JUDGMENT

Defendant argues that it is entitled to summary judgment on any claim for a manufacturing (as opposed to design) defect and any claim based on a failure to warn. (Mot. Summ. J. at 4). In his Response, Plaintiff agrees with Defendants that there are no issues of fact regarding such claims and states, "Plaintiff does not intend to pursue at trial any claim for a manufacturing defect. Nor does Plaintiff intend to pursue any claims based on a failure to warn or an inadequate warning. For these reasons, Plaintiff does not oppose the dismissal of such claims." (Resp. to Mot. Summ. J., Doc. 51, at 1). Accordingly, Defendant will be granted summary judgment on those claims.

## III. MOTION TO EXCLUDE EXPERT TESTIMONY

Defendant seeks the exclusion of certain testimony by Plaintiff's expert, Darry Robert Holt.[1] Mr. Holt intends to testify (1) that flesh-detection technology was available prior to the subject saw's manufacture; (2) that the previously-available technology could be incorporated into the subject saw with some changes to the saw; (3) that the subject saw with the flesh-detection technology could and should have been put into production and available to consumers prior to the time of the saw's manufacture; and (4) that the patents held by SawStop on its flesh-detection technology had no impact on Defendant's ability to implement flesh-detection technology. In addition, while Plaintiff represents that Mr. Holt will not testify regarding the economic feasibility of implementing the flesh-detection technology, (Pl.'s Resp. to Mot. to Exclude, Doc. 52, at 1),

---

[1] Defendant also seeks to exclude the expert testimony of Dr. Stephen F. Gass. However, Plaintiff represents that Dr. Gass will not testify in this case. (Pl.'s Resp. to Mot. to Exclude, Doc. 52, at 14). Therefore, the Court will not address the admissibility of Dr. Gass's testimony.

Plaintiff indicates that Mr. Holt will testify regarding others' cost estimates for implementing the technology.[2] (*Id.* at n.2).

### A.   Legal Standard

Rule 702 of the Federal Rules of Evidence compels courts to perform a "gatekeeping" function to determine whether proffered expert testimony is reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 590–91 (1993). Courts must carefully judge the intellectual rigor employed by an expert because expert witnesses are free to opine without firsthand knowledge and may rely upon inadmissible hearsay. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The burden of laying the proper foundation for the admission of expert opinion testimony rests with the party offering that testimony. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). The admissibility of expert testimony must be established by a preponderance of the evidence. *Id.*

Expert testimony may be admitted into evidence if certain criteria are met. *See* Fed. R. Evid. 702. First, "the expert [must be] qualified to testify competently regarding the matters he intends to address." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing Fed. R. Civ. P. 702 and *Daubert*, 509 U.S. at 589). Second, "the methodology by which the expert reaches his conclusions [must be] sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*." *Id.* Finally, "the testimony [must] assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* Defendant challenges Mr. Holt's methodology.

---

[2] Plaintiff also represents that Mr. Holt will not testify regarding the adequacy of Defendant's warnings. (Pl.'s Resp. to Mot. to Exclude at 1). In addition, Defendant does not challenge Mr. Holt's ability to testify regarding the efficacy of flesh-detection technology. (Def.'s Reply, Doc. 55, at 8). Accordingly, the Court will not address these matters.

### B.     Mr. Holt's Qualifications

Although Defendant does not directly challenge Mr. Holt's qualifications regarding the opinions at issue here, such qualifications have "some bearing on the determination of the reliability of the underlying reasoning or methodology" and are thus relevant. *Joiner v. Gen. Elec. Co.*, 78 F.3d 524, 532 (11th Cir. 1996), *rev'd on other grounds*, 522 U.S. 136, 118 (1997).

Mr. Holt holds a bachelor's degree in mechanical engineering, (Holt Resume, Doc. 52-17, at 1); he has ten years of experience as a mechanical engineer in product production, maintenance, and manufacturing, (Holt Decl., Doc. 52-16, ¶ 2); and he has thirty-eight years of experience as a consulting engineer, "evaluating the safety design and condition of hundreds of machines and products of all types, including table saws," (*id.*). Throughout the course of his career, Mr. Holt has inspected, reviewed, and tested various table saws. (*Id.*). Specifically relevant to this litigation, Mr. Holt has spent over four thousand hours during the past ten years investigating and testing SawStop technology. (*Id.* ¶ 231).

### C.     Availability

Mr. Holt opines that, as early as 2000, flesh-detection technology was available. (*Id.* ¶ 230). Mr. Holt bases this opinion on the fact that in 2000 the inventor of SawStop, Dr. Gass, presented a working prototype at a tradeshow, (*id.* ¶¶ 8–9, 92), albeit on a contractor table saw, (Gass Decl. ¶ 8), which is different from the benchtop saw at issue in this case. Although Defendant does not concede outright that Mr. Holt should be able to opine regarding when flesh-detection technology was available, it only halfheartedly challenges this issue. (*See* Mot. to Exclude at 1 ("Holt does not have a sufficient basis for [an] opinion on any of the [referenced] categories . . . except, perhaps, the matter of availability")). Based on Mr. Holt's in-depth investigation into the history and

development of flesh-detection technology, his testimony regarding when the technology was available is sufficiently reliable.

  **D.**  **Technological Feasibility and Timing**

Mr. Holt then uses his engineering background along with his experience evaluating table saws and flesh-detection technology to conclude that flesh-detection technology functions the same on a larger saw—such as the one used by Dr. Gass for his prototype—as it does on a smaller benchtop table saw, such as the one at issue here. Thus, Mr. Holt opines that the flesh-detection technology that was available in the early 2000s could have functioned on a benchtop saw with a few changes to the saw. In other words, Mr. Holt opines that in 2001 or 2002—prior to the manufacture of the saw at issue—it was technologically feasible to incorporate flesh-detection technology into a benchtop saw like the one that allegedly injured Plaintiff. Defendant does not challenge Mr. Holt's opinion that flesh-detection technology could be incorporated into a benchtop table saw.[3] (Reply at 8 ("Holt [can] confirm that the [flesh-detection] technology can be incorporated into a benchtop saw.")). Instead, Defendant argues that Mr. Holt's opinion as to timing—that such technology could have been implemented prior to the manufacture of the saw at issue in 2009—is unreliable and should be excluded.

The Court understands Defendant's argument to present two separate issues. The first issue is whether Mr. Holt can opine that, at the time the technology became available, it could have worked on a benchtop table saw, i.e., that it was technically feasible to incorporate such technology. The second issue is whether Mr. Holt can testify regarding the amount of time it would

---

[3] Although Defendant disputes whether the technology could be incorporated into the saw at issue, which is smaller and lighter in weight than the current iterations of benchtop saws with flesh-detection technology, Defendant does not challenge the admissibility of Mr. Holt's testimony on this basis.

have taken to implement the technology into a fully-functional production model that was available to consumers.

With regard to the first opinion—that the technology that was available in 2001 or 2002 could have technically worked on a benchtop table saw—Mr. Holt's opinion is sufficiently reliable. Mr. Holt extensively reviewed the technology available at the relevant time, the current benchtop saw with SawStop technology, and the saw at issue to determine whether the technology available at the time could have feasibly worked on a benchtop saw. This investigation, combined with Mr. Holt's qualifications, are sufficient.

Mr. Holt's opinion regarding the time that would be required to transform a prototype benchtop saw into a consumer-available production model, however, presents a more complicated issue. Mr. Holt opines that Defendant could and should have made a benchtop table saw with flesh-detection technology available to consumers no later than 2002. (Holt Decl. ¶ 230). Mr. Holt bases his opinion on the fact that the technology was proven to be available in 2000 and that it only took Dr. Gass thirty days to create a "working, proof of concept prototype." (Holt Decl. ¶¶ 92, 231). Mr. Holt also relies on the fact that, in his opinion, reconfiguring a benchtop table saw to incorporate flesh-detection technology is a fairly simple matter, primarily consisting of strengthening the saw to withstand the stopping force of the flesh-detection technology, reconfiguring the design to encompass the component parts of the flesh-detection technology, and conducting a "mechanical engineering stress analysis," all of which Mr. Holt categorizes as fairly simple engineering feats that are regularly accomplished. (*Id.* ¶ 231).

As an initial matter, the fact that Dr. Gass was able to quickly create a "proof of concept prototype" on a different type of saw is wholly irrelevant to how long it takes to turn a prototype into a consumer-ready production model. Moreover, Mr. Holt admits that he has no experience or

personal knowledge regarding designing, building, or manufacturing a table saw for commercial production or implementing new technology for commercial production. (Holt Dep., Doc. 47-9, at 140:18–142:24). Mr. Holt has not demonstrated any reliable basis on which he can opine regarding how long it would take for a saw manufacturer to incorporate flesh-detection technology into a consumer-ready benchtop table saw.[4] To the contrary, Mr. Holt has testified that he has no such knowledge. Thus, Mr. Holt's opinion regarding when Defendant could or should have made a benchtop saw with flesh-detection technology available to consumers will be excluded.[5]

### E.     Impact of SawStop's Patents

Next, Defendant seeks to exclude Mr. Holt's opinion regarding the impact that SawStop's patents would have had on Defendant's implementation of flesh-detection technology. Mr. Holt's opinions on this matter will not be permitted. Mr. Holt has no expertise or experience in dealing with or evaluating patents, (Holt Dep. at 128:12–17), and he admitted that he did not know if the existence of SawStop's patents would impact Defendant's ability to develop its own flesh-detection technology, (*id.* at 130:13–19). Accordingly, Mr. Holt's opinion that SawStop's patents

---

[4] While Plaintiff relies on, and quotes heavily from, this Court's previous order in *Anderson v. Techtronic Industries North America Inc.,* 6:13-cv-1571-Orl-41TBS, which allowed Mr. Holt to testify regarding technological feasibility, that order only addressed Mr. Holt's ability to opine regarding technological feasibility in general. The defendant in that case did not raise the issue of the timing of implementing such technology.

[5] Defendant focuses significant portions of its argument on the fact that Mr. Holt relies on Dr. Gass's representations regarding how long it would take to make a consumer-ready benchtop saw available while at the same time attempting to otherwise discredit Dr. Gass. Defendant points out that Mr. Holt has never reviewed any of Dr. Gass's information regarding the development of SawStop's benchtop saw. Because Mr. Holt testified that he has no knowledge or experience regarding how long it would take to put such a saw on the market, the Court need not address Defendant's argument regarding the reliability of Dr. Gass's opinions on the matter. In the same vein, Mr. Holt opines that Defendant could have implemented the flesh-detection technology into a benchtop saw more quickly than SawStop because Defendant is a larger company with more resources. Mr. Holt provides no basis for his opinion other than an inference that the jurors can make on their own. Such an opinion will not be permitted.

would not impact Defendant's ability to implement flesh-detection technology, (*id.* at 129:7–10), is mere supposition and will be excluded.

### F. Cost Estimates

Finally, even though Plaintiff claims Mr. Holt will not present any of his own opinions regarding the economic feasibility of implementing flesh-detection technology, Plaintiff intends to use Mr. Holt to testify regarding other individuals' cost estimates for doing so. (Pl.'s Resp. to Mot. to Exclude at 1 n.1). To the extent Plaintiff is trying to use Mr. Holt as an expert on the cost of implementing the technology, Mr. Holt is not qualified. Mr. Holt has no experience or training in economics or finance, (*see generally* Holt Resume), nor has he presented any type of reliable economic analysis. Thus, as cogently argued by Defendant, it would be improper to allow Mr. Holt, as an expert witness, to reference such estimates in the absence of reliable materials in support thereof.

To the extent Plaintiff intends to utilize Mr. Holt as a fact witness regarding the cost estimates, that issue is beyond the scope of the parties' briefing and will not be addressed at this time. The Court will entertain challenges to such testimony if it becomes necessary to do so.

### IV. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Partial Summary Judgment (Doc. 48) is **GRANTED**. Defendant is entitled to summary judgment as to any claims of manufacturing defect or failure to warn.

2. Defendant's Motion to Exclude Expert Testimony of Darry Robert Holt and Stephen F. Gass, Ph.D. (Doc. 47) is **GRANTED in part** and **DENIED in part** as set forth herein.

**DONE** and **ORDERED** in Orlando, Florida on September 3, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record